IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

**RICHARD C. LERBLANCE**, on behalf of himself and all others similarly situated, )
)
)
**Plaintiff,** )
)
)
v. ) Case No. 23-CV-47-KEW
)
)
)
**CALYX ENERGY III, LLC** )
)
**Defendant.** )

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

COMES NOW, Plaintiff, Richard C. Lerblance ("Lerblance" or "Plaintiff"), for himself and all others similarly situated (hereinafter, Lerblance and the putative class members are collectively referred to as the "Class" or "Class Members"), and for their cause of action against Defendant, Calyx Energy III, LLC ("Calyx Energy" or "Defendant"), allege and state as follows:

### CASE SUMMARY

1. This class action arises out of Calyx Energy's breach of its express and implied duties under oil and gas leases to pay royalty to Plaintiff and the putative Class on the full production of natural gas (and all constituents) from wells in Oklahoma (the "Oklahoma Wells") in which Plaintiff and the Class own mineral interests.

2. Calyx Energy used its position as operator and oil and gas working interest owner to secretly underpay royalty due Plaintiff and the putative Class Members on production of gas and its constituents from the Oklahoma Wells. Calyx Energy accomplished this by taking improper deductions from royalty payments, including but not limited to: (a) deducting direct and indirect,

1

post-production fees for gathering, compression, dehydration, processing, marketing and/or other similar services required to transform the raw wellhead gas into marketable products; and (b) not paying royalty on natural gas produced from the Oklahoma Wells that Calyx Energy used, caused to be used and/or allowed third parties to use off the lease premises as fuel to, *inter alia*, power compressors and other machinery and equipment in gathering system and/or gas plant operations (hereinafter, "Fuel Gas").

3.  Calyx Energy secretly underpaid royalty to the Class by failing to disclose to Plaintiff and other putative Class Members on their monthly royalty checkstubs that Calyx Energy was not paying royalty on the full volume and value of production from the Oklahoma Wells.

4.  Plaintiff brings this action to recover the royalty Calyx Energy owes Plaintiff and all similarly situated Oklahoma royalty interest owners—*i.e.*, the Class—for its uniform breach of express and implied covenants to pay royalty on the full production of natural gas (and all constituents) from the Oklahoma Wells.

## VENUE AND JURISDICTION ALLEGATIONS

5.  Plaintiff Richard C. Leblance is a citizen and resident of the State of Oklahoma.

6.  Plaintiff owns mineral interests in Oklahoma wells, operated by Calyx Energy and pursuant to which Calyx Energy incurred an obligation to pay oil and gas proceeds therefrom, including the: (a) Pocahontas 1-16-4WH and (b) Pocahontas 2-16-4WH—located in Hughes County, Oklahoma, Section 16, Township 008-North, Range 012-East. As such, Plaintiff's claims arose in Hughes County, Oklahoma.

7.  Calyx Energy is a citizen and resident of the State of Oklahoma. Calyx Energy is a limited liability company, organized under Delaware law, that is headquartered and has its principal place of business in the State of Oklahoma. The citizenship of Calyx Energy's members

is currently unknown to Plaintiff. Calyx Energy has owned property interests, operated wells, marketed gas and paid royalty to mineral interest owners in Hughes County, Oklahoma, in addition to other counties in Oklahoma.

8. Plaintiff and the other putative Class Members are citizens of various states, including the State of Oklahoma, who own mineral interests in the State of Oklahoma. Their claims arose from their ownership interests in property—the Oklahoma Wells—located in Hughes County, Oklahoma and various other counties in Oklahoma.

9. This Court has jurisdiction over this action, pursuant to 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and this is a class action in which the citizenship of at least one Class Member is different than that of Defendant.

10. This Court has both specific and general personal jurisdiction over the Defendant. Calyx Energy engaged in continuous and systematic activities within the State of Oklahoma. These activities include operating the Oklahoma Wells from which the claims of the Class arise.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391. This action concerns property and mineral interests located within this District, and a substantial part of the events and omissions giving rise to the claims alleged herein occurred within this District. Moreover, Calyx Energy owns and operates property located in, employs agents in, resides in, and is subject to personal jurisdiction within this District.

**CLASS ACTION ALLEGATIONS**

The allegations set forth above are incorporated herein by reference.

12. Plaintiff brings this action as the representative of a Class pursuant to Federal Rule of Civil Procedure 23. The "Class" is comprised of:

>All non-excluded persons or entities who are or were royalty owners in Oklahoma wells where Calyx Energy III, LLC is or was the well operator and working interest owner (or, as a non-operating working interest owner, Calyx Energy III, LLC separately marketed gas). The Class does not include overriding royalty owners or other owners who derive their interest through the oil and gas lease.
>
>The persons or entities excluded from the Class are: (1) agencies, departments or instrumentalities of the United States of America and the State of Oklahoma; (2) officers of the Court involved in this action; (3) publicly traded oil and gas exploration companies and their affiliates; and (4) persons or entities that Plaintiff's counsel is, or may be prohibited from representing under Rule 1.7 of the Oklahoma Rules of Professional Conduct.

13. The Class numbers more than one thousand members, making it so numerous that joinder of all members is impracticable.

14. Calyx Energy is or was the owner of extensive oil and gas leasehold interests within the State of Oklahoma. Calyx Energy, as well operator (and as non-operator) has marketed gas from the Oklahoma Wells and been responsible for properly paying royalty under the terms of oil and gas leases.

15. The averments of fact and questions of law herein are common to the Class.

16. Plaintiff is a mineral interest owner in Oklahoma Wells where Defendant is or was the operator and/or where Defendant, as non-operator, separately marketed gas production from wells. Plaintiff's claims are typical of the Class' claims.

17. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests do not conflict with the interests of the Class. Plaintiff is represented by counsel skilled and experienced in oil and gas accounting and complex civil litigation matters, including oil and gas class actions.

18. The averments of fact and questions of law herein, which are common to the

members of the Class, predominate over any questions affecting only individual members. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, *inter alia*:

    a.    The questions of law and fact are so uniform across the Class that there is no reason why individual Class members would want to control the prosecution of their own actions, at their own expense;

    b.    To Plaintiff's knowledge, there is no pending litigation against Defendant that incorporates the statewide claims of improper deductions for post-production costs and non-payment of royalty on Fuel Gas from mineral interest proceeds related to the Oklahoma Wells asserted herein;

    c.    The interests of all parties and the judiciary in resolving these matters in one forum without the need for a multiplicity of actions are great;

    d.    The difficulties in managing this class action will be slight in relation to the potential benefits to be achieved on behalf of each and every Class member, and not just those who can afford to bring their own actions; and

## FACTUAL ALLEGATIONS AND CLAIMS

The allegations set forth above are incorporated herein by reference.

19.    Based on information and belief, Calyx Energy used its position as operator and as oil and gas working interest owner to underpay royalty due Plaintiff and the putative Class Members on production of natural gas and its constituents from the Oklahoma Wells. Calyx Energy has accomplished this by taking various improper deductions from royalty payments including, but not limited to, the following: (1) deducting direct and indirect fees for gathering, compression, dehydration, processing, marketing and/or other similar services; and (2) not paying

royalty on Fuel Gas—*i.e.*, wellhead gas that was used off the lease premises in gas gathering systems and gas plants.

20.     The relationship between Plaintiff and Defendant is contractual in nature by virtue of lease agreements between them covering the Pocahontas 1-16-4WH and Pocahontas 2-16-4WH wells, which are located in Hughes County, Oklahoma, and completed as producers in established Oklahoma Corporation Commission ("OCC") drilling and spacing units.

21.     Pursuant to OKLA. STAT. tit. 52, § 87.1(e) and § 570.4, all royalties in a drilling and spacing unit are effectively pooled or "communitized" so that all royalty owners receive a proportionate share of all royalty revenue from all gas sold from the well. Each royalty payment goes into a common royalty pool comprised of all proceeds from all of the gas sales from the well. Once pooled, the revenue in the royalty pool is then distributed proportionately among all royalty owners in the drilling and spacing unit—not just the royalty owners who have a direct lessor-lessee relationship with the working interest owner selling the gas.

22.     The result of § 87.1(e) and § 570.4 is that, ultimately, royalty owners do not receive royalty based solely on the terms of their individual leases, but rather, on their proportionate share of all royalties from the common royalty pool. Stated differently, if Defendant is selling gas only for its own account from Defendant's well that is producing from a drilling and spacing unit, then Defendant's royalty obligations are determined by the terms of its oil and gas lease. The royalty share must then be distributed proportionately between all royalty owners in the well (not just the royalty owners who have a lease directly with Defendant).

23.     All Oklahoma Wells from which Defendant marketed gas for itself and others are subject to drilling and spacing orders of the OCC. Defendant pays royalties pursuant to § 570.4 using the methodology described above. Plaintiff and other Class Members that have a lease

directly with Defendant in relation to a particular Oklahoma Well have a breach of contract claim against Defendant when royalty is not paid correctly in regard to that lease and well. Plaintiff and those Class Members have a right to their proportionate share of the royalty proceeds from Defendant's gas sales. Plaintiff and those Class Members who do not have a lease directly with Defendant in regard to a particular well also have a right to their proportionate share of the royalty proceeds from Defendant's sales. Plaintiff and those Class Members have an unjust enrichment claim in law and equity.

24. The relationship between Defendant and Plaintiff and the Class is such that the Class Members have reasonably placed trust and confidence in Defendant to properly pay royalty.

25. Defendant has superior access to the information relating to the claims herein.

26. Based on information and belief, Defendant has used its position as operator and as oil and gas working interest owner to wrongfully deduct fees to transform the raw gas into marketable products, including, but not limited to, fees for gathering, compressing, dehydrating, processing and/or marketing the gas from royalty payments due Plaintiff and the Class on the Oklahoma Wells.

27. Based on information and belief, Calyx Energy also used, caused to be used and/or allowed third parties to use Fuel Gas—*i.e.*, certain amounts of raw natural gas produced from the Oklahoma Wells off the lease premises as fuel to power various machinery and equipment, on gathering systems and/or at gas plants without paying royalty on such Fuel Gas.

28. These improper fees and costs were charged for midstream services incurred to place the raw wellhead gas produced from the Oklahoma Wells into marketable condition; did not enhance the value of an already marketable product; and/or were not reasonable and did not increase the royalties due Plaintiff and the Class in proportion to the fees charged.

29. Plaintiff's lease prohibits Defendant from deducting costs incurred to transform raw gas into marketable products from Plaintiff's royalty payments, including fees for gathering, compression, dehydration, processing and marketing.

30. In violation of Plaintiff's lease, Defendant improperly charged Plaintiff such fees and costs to transform the raw gas from his wells into marketable products.

31. Defendant's royalty payment methodology uniformly breaches the Class's oil and gas leases. As a result, Plaintiff and the other Class Members have been damaged by Defendant's uniform royalty payment practice because they have not received the full amount of royalty to which they are entitled.

32. Based on information and belief, Defendant fraudulently concealed from Plaintiff and the Class the true gross volume and value of the gas and its constituents sold by falsely reporting a net volume and value of the gas sold on the monthly royalty checkstubs Defendant sent to Plaintiff and the Class less Fuel Gas and other improper deductions.

33. Based on information and belief, Defendant used said monthly royalty checkstubs to deceive Plaintiff and the Class into believing that all royalties had been properly paid and that Defendant was properly accounting to Plaintiff and the Class for royalty owed.

34. Plaintiff and the Class relied on these royalty checkstubs as being accurate and truthful in reporting the full volume and value of the gas and its constituents and the true price Defendant received for the gas and its constituents.

35. Calyx Energy violated the royalty reporting requirements of the Oklahoma Production Revenue Standards Act ("PRSA") by knowingly and intentionally failing to report to Plaintiff and the putative Class the full and correct volume, price and value of the gas before all deductions.

36. Defendant is fully aware of its express and implied duties and obligations set forth in the Class Members' oil and gas leases. Defendant is fully aware that its uniform royalty payment practices described herein breaches these duties and obligations. Nevertheless, Defendant has taken no action to cure these violations of law.

37. Defendant's acts amount to independent torts resulting in damages to Plaintiff and the Class and the unjust enrichment of Defendant.

38. Defendant's tortious acts were performed intentionally, maliciously and with utter disregard to the rights of Plaintiff and the Class. Defendant failed to pay the proceeds at issue with the actual, knowing and willful intent to either deceive Plaintiff and the Class, to whom the proceeds were due, and/or deprive proceeds from Plaintiff and the Class whom Defendant knew, or was aware, were legally entitled to the proceeds. Defendant should be required to pay punitive damages as punishment for its wrongdoing and as an example to deter others who might act in a similar manner.

39. The fraud and deceit described herein served to financially benefit Defendant through the reduction of royalties paid to Plaintiff and the Class on production marketed by Defendant from the Oklahoma Wells.

40. Defendant has been unjustly enriched as a result of its improper actions. Defendant should not be allowed to retain any portion of its ill-gotten gains, or profits on those ill-gotten gains. Defendant should be required to disgorge, and pay as additional damages, all such gains, and profits on such gains, to Plaintiff and the Class.

41. To the extent that Defendant relies on any statute of limitation as a defense, Plaintiff and the Class plead that, under the facts at issue here, the doctrine of equitable estoppel or tolling, open account, discovery rule and/or other defenses tolled the running of any statute of limitations.

## I.  BREACH OF CONTRACT

The allegations set forth above are incorporated herein by reference. This claim is made both cumulatively and in the alternative to the other claims made herein.

42. As discussed above, in certain Oklahoma Wells, Plaintiff and other Class Members have a direct contractual relationship with Defendant by virtue of their direct lessor-lessee relationship.

43. The leases require Defendant to pay royalty on all gas and its constituents, including Fuel Gas, and prohibit Defendant from deducting costs incurred to transform raw gas into marketable products from the royalty interest, including costs for gathering, compression, dehydration, processing, marketing, and other similar services.

44. Defendant has breached the implied covenant to market and the express covenants in each oil and gas lease prohibiting Defendant from deducting costs incurred to transform raw gas and its constituents into marketable products and requiring Defendant to pay royalty on gas used off the lease as fuel and has otherwise breached its duties to properly pay royalty.

45. As a result, Plaintiff and the putative Class have been damaged.

## II.  UNJUST ENRICHMENT

The allegations set forth above are incorporated herein by reference. Plaintiff and the putative Class assert a claim for unjust enrichment in the alternative and as a supplement to each of their other claims.

46. Plaintiff and the putative Class have been damaged and Defendant has been unjustly enriched as a result of its improper underpayment of royalty to Plaintiff and the Class.

47. In certain Oklahoma Wells, some Class Members may not have a direct contractual relationship with Defendant.

48. For such Class Members in such Wells, there is no adequate remedy at law available to recover damages for Defendant's improper underpayment of royalty.

49. Plaintiff and the putative Class claim that Defendant has been unjustly enriched to the extent Defendant benefitted from the use of money that rightfully should have been paid as royalty to Plaintiff and the Class.

### III.    FRAUD (ACTUAL AND CONSTRUCTIVE) AND DECEIT

The allegations set forth above are incorporated herein by reference. This claim is made both cumulatively and in the alternative to each of the other claims made.

50. Defendant secretly and knowingly underpaid royalties on Oklahoma Wells without the knowledge of Plaintiff and the putative Class.

51. Defendant implemented a uniform and systematic payment policy to deduct post-production fees from royalty and to not pay royalty to Plaintiff and the putative Class on Fuel Gas. Defendant made uniform misrepresentations and/or omissions to Plaintiff and the putative Class on their monthly royalty checkstubs that falsely reported a gross volume, value and price for the gas that was actually a net volume, value and price.

52. Defendant falsely represented a gross volume for the gas on Plaintiff and the Class' monthly royalty check stubs that was actually a volume of gas net of fuel consumed off the lease in gathering systems and gas plants.

53. Defendant sent these false and misleading monthly statements to Plaintiff and the other Class Members on royalty checkstubs with the intent that Plaintiff and the Class rely on those false statements. Defendant knew Plaintiff and the Class had no choice but to rely on Defendant's false statements. And Plaintiff and the Class did, in fact, rely on these uniform misrepresentations

and/or omissions as being truthful and accurate. Under such circumstances, reliance of the Class is presumed in law and in fact.

54. As a result, Plaintiff and the putative Class have been damaged and Defendant has been unjustly enriched.

55. Defendant's tortious acts were performed intentionally, maliciously and with utter disregard to the rights of Plaintiff and the Class. Defendant should pay, in addition to actual damages, punitive damages as a method of punishing Defendant and setting an example for others.

### IV.     ACCOUNTING

The allegations set forth above are incorporated herein by reference.

56. Defendant has a duty to timely disclose to Plaintiff and the putative Class the full and true value of the production from the Oklahoma Wells. Defendant has breached that duty.

57. Specifically, Defendant has failed to fully account to Plaintiff and the putative Class for: (1) their proper royalty share of production from the Oklahoma Wells; (2) the full value of production from the Oklahoma Wells; (3) the full volume of production from the Oklahoma wells; the true price received for the gas from an arm's-length sale; and (3) all deductions and reductions from the value and/or volume of production from the Oklahoma Wells.

58. Plaintiff requests an order from this Court requiring Defendant to provide a full and complete accounting for all production proceeds and deductions from the date Defendant acquired its working interest until the date of trial in this matter on each Oklahoma Well.

**WHEREFORE,** Plaintiff seeks: (1) an order from this Court allowing this case to proceed as a class action; (2) judgment for damages and other relief, as alleged herein, against Defendant comprised of: (a) an accounting; (b) damages based on all of the claims made herein; (c) punitive damages; (d) interest; (e) attorney's fees; (f) expert and litigation costs; (g) court costs; and (h)

such other relief as Plaintiff and the putative Class may be entitled to by law or in equity.

**JURY TRIAL DEMANDED**

DATED: February 6, 2023

*/s/ Lisa Baldwin*
Bradley E. Beckworth, OBA No. 19982
Jeffrey J. Angelovich, OBA No. 19981
Lisa Baldwin, OBA No. 32947
Drew Pate, OBA No. 34600
Cody L. Hill, Texas Bar No. 24095836
**NIX PATTERSON, LLP**
8701 Bee Cave Road, Suite 500
Austin, TX 78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5335
E-mail: bbeckworth@nixlaw.com
jangelovich@nixlaw.com
lbaldwin@nixlaw.com
dpate@nixlaw.com
codyhill@nixlaw.com

Susan Whatley, OBA No. 30960
**NIX PATTERSON, LLP**
P.O. Box 178
Linden, TX 75563
Telephone: (903) 215-8310
Email: swhatley@nixlaw.com

Michael Burrage, OBA No. 1350
**WHITTEN BURRAGE**
512 N. Broadway Ave, Suite 300
Oklahoma City, OK 73102
Telephone: (405) 516-7800
Facsimile: (405) 516-7859
E-mail: mburrage@whittenburragelaw.com

**ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS**