## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **RICHARD C. LERBLANCE, and** | ) | |
| **CHIEFTAIN ROYALTY COMPANY,** | ) | |
| **on behalf of themselves and all others** | ) | |
| **similarly situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No. CIV-23-47-JFH-GLJ** |
| | ) | |
| **CALYX ENERGY III, LLC,** | ) | |
| | ) | |
| **Defendant,** | ) | |
| | ) | |

## ORDER

This matter comes before the Court on Plaintiffs' Second Motion to Compel Discovery and Brief in Support filed under seal. *See* Docket No. 75. Plaintiffs bring this case for the underpayment of royalties on behalf of themselves and the putative class members for production of gas and its constituents from Oklahoma wells. On March 21, 2023, the Court referred this case to the undersigned Magistrate Judge for all further proceedings in accordance with jurisdiction pursuant to 28 U.S.C. § 636. *See* Docket No. 28. On July 1, 2024, a hearing was held on Plaintiffs' Motion. *See* Docket No. 84. For the reasons stated below, the Plaintiffs' Second Motion to Compel Discovery and Brief in Support [Docket No. 75] is DENIED.

### Procedural Background

On or around April 25, 2023, Plaintiffs served their First Requests for Production of Documents, Interrogatories, and Requests for Admissions to Defendant Calyx Energy

III, LLC ("First Discovery Requests").  Although somewhat vague, Plaintiffs state that they have asked for but not received the following information in electronic format: (a) royalty owner names and addresses; (b) lease information; and (c) net mineral acre information. *See* Docket No. 75, p. 9.  Although Plaintiffs do not include in the Motion a verbatim recitation of the discovery requests at issue or attach a copy of the First Discovery Requests to the Motion as required by LCvR 37.1, Plaintiffs' Motion indicates that topic (a) above is related to Request for Production No. 4 and topic (c) is related to Request for Production No. 21.  No request for production is identified for topic (b).  *Id*.  Document Request No. 4 requests that Defendant "[p]roduce all documents related to payment of royalties on the Oklahoma Wells during the Relevant Time Period including, without limitation: (1) all pay decks; (2) royalty owner names, address; (3) actual royalty payments; and (4) checks and check counter- foils."  *See* Docket No. 80, 3.  Document Request No. 21 requests Defendant:

> Provide separately Your entire lease file for each Calyx Energy Oklahoma Lease which includes, but is not limited, to the following:
> (a) Actual oil and gas lease or evidence of forced pooled royalty interest;
> (b) Lease data sheet;
> (c) Title documents evidencing net mineral acres covered by the lease and ownership of the lease;
> (d) Assignments of working interest;
> (e) Ownership of the underlying oil and mineral interest and transfers of title to same;
> (f) Any other document in Calyx Energy's lease file for each Calyx Energy Oklahoma Lease.

*Id*.

Plaintiffs also indicate they seek to have Defendant "associate Calyx's leases to its Oklahoma Wells in electronic/native format" and reference Interrogatory No. 17 but do not quote it verbatim. *Id.*, p. 11.   Interrogatory No. 17 specifically requests:

> Separately in relation to each and every Calyx Energy Oklahoma Lease *provide the following in searchable electronic spreadsheet form*: [1] Identification of the associated Oklahoma Well (well name, Calyx Energy well number, producing formation and location; [2] The net mineral acres applicable to the lease within the Oklahoma Corporation Commission ("OCC") created Unit for each Calyx Energy Well and Calyx Energy's percentage ownership in each lease along with the size of the OCC created Unit; [3] Calyx Energy lease number for the lease; [4] Lease basics (lessor, lessee, date and legal description); and [5] the royalty clause contained in the lease and any amendment, addenda, or supplementation thereto and state separately for each lease.

*See* Docket No. 80, Ex. 3 (emphasis added).   Plaintiffs assert that Defendant has not produced documents containing royalty owner names and addresses for all owners to whom it pays royalties on its Oklahoma wells or net mineral acres data for each of its Oklahoma royalty owners "in *any* format."   *See* Docket No. 75, p. 11.

Plaintiffs also seek to compel the production of the purchase and sale agreement between Riverside Midstream Partners, LLC, Riverside Gathering, LLC and Tall Oak Woodford, LLC ("Riverside PSA").   Plaintiffs argue the Riverside PSA falls under Request for Production Nos. 5 and 15.   Request for Production No. 5 requests Defendant "[p]roduce all contracts related to the gathering and processing of raw wellhead gas for the Oklahoma Wells between Calyx Energy and any gas gatherer or gas processor *during the Relevant Time Period*, as well as all communications and other documents related to these contracts."   *See* Docket No. 80, Ex. 3 (emphasis added).   Document Request No. 15 requests "any and all agreements concerning the ownership and operation of any gathering

and/or pipeline systems in Oklahoma owned in whole or in part by You *during the Relevant Time Period*." *Id.* (emphasis added). The First Discovery Requests provide that "'Relevant Time Period' shall refer to that period of time from October 1, 2018, through the pendency of this litigation." *Id.* The Riverside PSA concerns the 2017 sale of an incomplete gathering system from Riverside Gathering LLC to Tall Oak Woodford, LLC. Riverside Gathering LLC and Defendant have some common members/owners.

## Analysis

### I.   Legal Standard

Federal Rule of Civil Procedure 26(b)(1) provides as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). The scope of discovery under Rule 26(b)(1) is broad, but it "is not without limits and the trial court is given wide discretion in balancing the needs and rights" of the parties. *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995) (internal quotation marks omitted). "When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under [Rule] 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad

disclosure." *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 653 (D. Kan. 2006). But "when the request is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Id*.

## I.   Royalty Owner Names and Addresses, Lease Information, and Net Mineral Acre Information in Electronic/Native Format

Plaintiffs argue that Defendant has not produced documents containing royalty owner names and addresses for all owners to whom it pays royalties on its Oklahoma wells or net mineral acres data for each of its Oklahoma royalty owners "in *any* format." *See* Docket No. 75, p. 11.  Defendant counters that they have produced all the information requested for these topics but have not done so in the format preferred by Plaintiffs because it does not maintain its records in requested manner.

Defendant asserts that it maintains much of its information regarding the Oklahoma wells, royalty payments, leases, etc. on a software system called "Enertia."  *See* Docket No. 75, Ex. C.  Defendant maintains two datasets on its Enertia data base that contain information covered by the requests as well as other information.  The two datasets are: 1) the lease dataset; and 2) the revenue dataset.  *See* Docket No. 80, Ex. 10.  Although both datasets are on Enertia, they are separately maintained and are not integrated.  *Id*. Defendant maintains that it produced voluminous documents that provide all the information covered in Request for Production Nos. 4 and 21, including all royalty owners' names and addresses, unredacted leases related to its Oklahoma wells, every single payment and check stub identifying all deductions for every Oklahoma well, Division Order Title Opinions and Division of Interest Revenue Decks for the Oklahoma wells, and

net mineral acre information.  *See* Docket No. 80, pp. 9-11.  At the July 1, 2024 hearing, Defendant's counsel represented that the documents were produced in their "native" format as Defendant maintains them, including in pdfs, Word documents and electronic files.  At the July 1, 2024 hearing, Plaintiffs' counsel conceded that Defendant has in fact produced the requested information for all or nearly all the royalty owners in the Oklahoma wells and leases, but it seeks to compel Defendant to provide all the information as a single report extracted from Defendant's Enertia software data base.

  As it relates to Request for Production Nos. 4 and 21, Plaintiffs' Motion is denied to the extent it seeks the production in a preferred format that does not exist.  It is well-settled that a responding party's obligations under Fed. R. Civ. P. 34 do not extend to non-existent materials.  *See*, *e.g.*, *Thompson v. Lantz*, 2009 WL3157561, at *1 (D. Conn. Sept. 25, 2009) ("[A] party cannot be compelled to create, or cause to be prepared, new documents solely for their production.  Rule 34 only requires a party to produce documents that are already in existence."); *Georgacarakos v. Wiley*, 2009 WL 924434, at *2 (D. Colo. April 3, 2009) (noting that "if a requested document is not in the possession of a party or non-party, such person need not create the nonexistent document"); *Alexander v. Federal Bureau of Investigation*, 194 F.R.D. 305, 310 (D. D.C. 2000) (a party is not required under Rule 34 to create new documents solely for their production. *See also Flying J, Inc. v. Pilot Travel Centers LLC*, 2009 WL 1835000, at *2 (D. Utah June 25, 2009) (holding that a request for production "cannot require a responding party to compile and summarize" responsive data).  Defendant asserts it does not have a single document in its possession,

custody or control that contains all the royalty owner and lease information requested by Plaintiffs.  *See* Docket No. 80, Ex. 10.  Plaintiffs have not disputed this assertion.

This conclusion is the same even though, in this instance, it might be possible for Defendants to run queries to compile and extract the requested information from Enertia in one or a few reports.  In *Seed Research Equip. Solutions, LLC v. Gary W. Clem , Inc.*, 2011 WL 3880895, at *1 (D. Kan. Sept. 1, 2011), the court confronted a similar situation in which a producing party possessed a computer data base from which it could generate certain reports but there was no evidence that such reports had ever been created.  The court found that a party from whom discovery was sought was not required to generate requested computer reports.  *Id.* (citing *Mon River Towing, Inc. v. Industry Terminal and Salvage Co.*, 2008 WL 2412946, at *1-2 (W.D. Pa. June 10, 2008) (holding that Rule 34 "does not require a responding party to create or generate responsive materials in a specific form requested by the moving party" although mere "computer print-outs" would fall within the parameters of Rule 34)).  In *Seed*, the court denied the motion to compel to the extent that the responding party's computer system could generate a report but had not done so.  *Id.* That appears to be the same situation as the present case.  The Court cannot compel Defendant to create a report from its Enertia data base by extracting certain information from it and creating a report that does not otherwise already exist.

It also appears that Plaintiffs are seeking to compel Defendant's answer to Interrogatory No. 17.  Although styled as an interrogatory, it is best described as a hybrid interrogatory/request for production because it specifically asks Defendant to provide the requested information "in searchable electronic spreadsheet form."  *See* Docket No. 80,

Ex. 3.  Like Rule 34, "[Fed. R. Civ. P.] 33 requires a party to respond to interrogatories only with information that is available to them." *XTO Energy, Inc. v. ATD, LLC*, 2016 WL 1730171, at \*22 (D.N.M. Apr. 1, 2016); *see also Barron v. Nat'l Health Ins. Co.*, 2020 WL 9600579, at \*1 (W.D. Okla. May 14, 2020) ("[A] party is to answer an interrogatory with the information 'available' to it...."). Thus, a court cannot compel a party to provide information it does not have. *See Hart v. Corr. Corp. of Am.*, 2012 WL 12957068, at \*1 (D.N.M. Sept. 13, 2012) ("A party responding to an interrogatory must answer it with whatever information he or she has" and "must use reasonable efforts to collect the information in order to answer the interrogatory.").

Based on the information provided to the Court, it appears that Defendant agrees that is has relevant information in its Enertia data base that is responsive to Interrogatory No. 17. Under questioning by the Court at the July 1, 2024 hearing, Defendant's counsel represented that Defendant answered Interrogatory No. 17 by referring to the business records it produced pursuant to Fed. R. Civ. P. 33(d).[1]  Thus, in responding to the interrogatory, Defendant did not create a "searchable electronic spreadsheet" as requested. As noted above, to the extent this interrogatory seeks to compel Defendant to create a spreadsheet or spreadsheets that otherwise do not exist by extracting data from its Enertia data base, Plaintiffs' Motion is denied.

Left unaddressed by the Motion is any specific objection to Defendant's answer to Interrogatory 17 as inadequate under the circumstances of this case beyond the failure to

---

[1] Neither party provided the Court a copy of Defendant's responses to the First Discovery Request, so it is unclear precisely how Defendant answered Interrogatory No. 17.

create a searchable electronic spreadsheet.  Plaintiffs' Motion does not raise any specific issue with either Defendant's identification of the business records with sufficient specificity or whether the burden of deriving the information is substantially the same for either party.  Instead, Plaintiffs focus on Defendant's *ability* to run their desired queries and compile a spreadsheet in their preferred form from Enertia.

Fed. R. Civ. P. 33(d) gives parties responding to interrogatories the option to answer the interrogatory by producing business records.  Under Rule 33(d), a party may produce business records in response to an interrogatory provided that the answer to the interrogatory "may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records ... and the burden of deriving or ascertaining the answer will be substantially the same for either party."  Fed. R. Civ. P. 33(d).  The responding party is, however, required to "[specify] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could."  Fed. R. Civ. P. 33(d)(1).  Moreover, Rule 33(d) is not satisfied by the "wholesale dumping of documents."  *O'Connor v. Boeing North American, Inc.*, 185 F.R.D. 272, 277 (C.D. Cal. 1999).  A general reference to responsive documents is an insufficient response.  *Pardick v. Barrow*, 2008 WL 2902623, at *2 (D. Colo. July 24, 2008); *see also DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 680–81 (D. Kan. 2004) (party may not merely refer to other pleadings "hoping that [the party] will be able to glean the requested information from them.").  However, in responding to interrogatories, "a party cannot ordinarily be forced to prepare its opponent's case."  8A Wright, Miller & Marcus § 2174.

Plaintiffs argue that James Stephenson, Jr., Defendant's Vice-President, Chief Financial Officer and General Counsel, testified that Defendant maintains information electronically on Enertia and is able to run reports from this data base. *See* Docket No. 75, p. 11. While true, Mr. Stephenson also testified that running such reports can be time consuming and would require multiple steps involving substantial time, effort, and resources to complete. *See* Docket No. 80, Ex. 1 & Ex. 10. While Plaintiffs' counsel discussed at the July 1, 2024 hearing the difficulty they will have compiling the desired data from the documents produced, neither he nor the Motion specifically addressed the differentiating burden in the context of Fed. R. Civ. P. 33(d). Moreover, while it is possible that the burden on Defendant to derive the requested information could be substantially less than on Plaintiffs, Plaintiffs did not directly challenge Defendant's claims on this matter or present any record evidence to the contrary. The Court declines to revamp Plaintiffs' Motion to articulate arguments they did not make.

## II.   Riverside PSA

Plaintiffs also seek the production of the Riverside PSA pursuant to Request for Production Nos. 5 and 15 under the First Discovery Requests.[2] Plaintiff argues the Riverside PSA is relevant in this case because the gas from the Oklahoma wells at issue were gathered by the Riverside gathering system, fees charged under the Riverside

---

[2] In Plaintiffs' Third Requests for Production of Documents to Defendant Calyx Energy III, LLC, served on May 30, 2024, *see* Docket No. 75, Ex. I, Plaintiff redefines Relevant Time Period as the time from which Defendant first paid royalties from each Oklahoma well. Although discussed at the July 1, 2024 hearing, the Third Discovery Requests and the revised definition of Relevant Time Period are not presently before the Court and is not addressed in this Order.

gathering system might have been improperly deducted from royalty payments and that Riverside was affiliated with Defendant because it had some common ownership. *See* Docket No. 75, p. 14. Defendant argues the document is irrelevant because it falls outside of the definition of Relevant Time Period in the First Discovery Requests and because it had nothing to do with gathering fees or other issues in this case. Defendant represented, and Plaintiffs do not challenge, that the Riverside PSA involved the purchase of the Riverside gathering system by Tall Oak and such purchase occurred in 2017.

Based on Plaintiffs' definition of the Relevant Time Period, the Riverside PSA is not responsive to Request for Production Nos. 5 or 15 in the First Discovery Requests. Plaintiff defines the Relevant Time Period for the First Discovery Requests as October 1, 2018 to the present. The requests seek "contracts related to the gathering and processing of raw wellhead gas for the Oklahoma Wells" and "all agreements concerning the ownership and operation of any gathering and/or pipeline systems in Oklahoma" during the Relevant Time Period. The Riverside PSA transaction occurred in 2017 and, thus, fall outside the Relevant Time Period. Therefore, the Riverside PSA is not responsive, and Plaintiffs' Motion is denied on this issue.

**Conclusion**

Accordingly, Plaintiffs' Second Motion to Compel Discovery and Brief in Support

[Docket No. 75] is DENIED without prejudice.

IT IS SO ORDERED this 2nd day of July 2024.

_____

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**