**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **RICHARD C. LERBLANCE and CHIEFTAIN ROYALTY COMPANY, on behalf of themselves and all others similarly situated,** | |
| **Plaintiffs,** | **Case No. CIV-23-47-JFH-GLJ** |
| **v.** | |
| **CALYX ENERGY III, LLC,** | |
| **Defendant.** | |

## ORDER

This matter comes before the Court on Plaintiffs' Motion to (1) Exclude Testimony of Defendant's Lawyer/Expert, Kris L. Terry; and (2) Strike the Terry Rebuttal [Docket Nos. 126, 129]. The Court has referred this case to the undersigned Magistrate Judge for all proceedings in accordance with 28 U.S.C. § 636. *See* Docket No. 28. As set forth below, the undersigned Magistrate Judge finds that the motion should be DENIED.

### I.    PROCEDURAL HISTORY

Plaintiffs Richard Lerblance, on behalf of himself and all others similarly situated, and Chieftain Royalty Company filed this case on February 6, 2023, *see* Docket Nos. 1-2, then filed an Amended Complaint on October 13, 2023, *see* Docket No. 47. On September 13, 2025, Plaintiffs filed Plaintiffs' Motion for Class Certification and Opening Brief in Support Thereof [Docket No. 115], which sets out causes of action for breach of express covenants and the implied duty to market in each relevant oil and gas lease, unjust

1

enrichment, and fraud, from May 1, 2015, to present. [Docket No. 115, pp. 25-40]. Defendant's response to Plaintiffs' Motion for Class Certification relies, in part, on expert testimony and reports from Kris L. Terry. Plaintiffs move to exclude Terry's opinions, as well as exclude and/or strike her rebuttal report entirely [Docket No. 129]. The undersigned Magistrate Judge set the Plaintiff's Motion to Exclude, Motion for Class Certification, and Defendant's Motion for Protective Order [Docket Nos. 115, 126, 129, & 152] for evidentiary hearing, which was ultimately held on February 11-12, 2026 [Docket Nos. 165-168]. Following the evidentiary hearing, including arguments as to Plaintiffs' Motion to Exclude, the undersigned Magistrate Judge took all matters under advisement.

## II.    Legal Standard

The trial court acts as a "gatekeeper" of proffered expert testimony by reviewing expert testimony for relevance pursuant to Fed. R. Evid. 401 and reliability pursuant to Fed. R. Evid. 702. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589-595 (1993); *see also United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) ("[T]he district court must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony") (quotation omitted). In performing its gatekeeping role, the Court is mindful of the fact that "[a] key but sometimes forgotten principle of Rule 702 and *Daubert* is that Rule 702, both before and after *Daubert*, was intended to relax traditional barriers to admission of expert opinion testimony." *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1082-1083 (D. Colo. 2006); *see also Daubert*, 509 U.S. at 588 (noting that Rule 702 represents part of the "liberal thrust" of the Federal Rules of Evidence); *United States v.*

*Gomez*, 67 F.3d 1515, 1526 (10th Cir. 1995) (the court should liberally admit expert testimony and has broad discretion in deciding whether to admit or exclude expert testimony); Fed. R. Evid. 702 advisory comm. notes (2000) (exclusion of expert testimony under Fed. R. Evid. 702 "is the exception rather than the rule.").

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides that a witness who is qualified as an expert by "knowledge, skill, experience, training, or education" may testify if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of a challenged expert must demonstrate by a preponderance of the evidence that the expert's testimony and opinion is admissible. *Nacchio*, 555 F.3d at 1241; Fed. R. Evid. 702 advisory comm. notes (2000).

In determining whether expert testimony is admissible, the Court generally employs a two-step analysis. First, the court determines whether the experts are qualified by "'knowledge, skill, experience, training, or education'" to render an opinion. *See Roe v. FCA US LLC*, 42 F.4th 1175, 1180 (10th Cir. 2022) (quoting Fed. R. Evid. 702). Second, if the experts are qualified, the Court determines whether their opinions are "reliable" under the principles set forth under *Daubert*, 509 U.S. 579, and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). *Id.* Moreover, the requirement that testimony must be reliable does not mean that the party offering such testimony must prove "that the expert is indisputably correct." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2004)

3

(quoting *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999)).  Rather, the party need only prove that "the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements."  *Id*. (quoting *Mitchell*, 165 F.3d at 781).  However, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."  *Roe*, 42 F.4th at 1181 (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

While an expert may not espouse legal conclusions, under Fed. R. Evid. 704(a), "an opinion is not objectionable just because it embraces an ultimate issue."  *See also Phillips v. Calhoun*, 956 F.2d 949, 952 (10th Cir. 1992) ("The district court merely permitted the city's personnel director and his counterpart at Del City, Oklahoma, who has had considerable consulting experience in the preparation of personnel manuals and job classification plans for various Oklahoma municipalities, to offer their understanding of the customary meaning and usage of the terms in question.  The use of experts to assist the interpretation of documents in this fashion is generally accepted, and the testimony offered, which merely expressed each affiant's informed opinion concerning the real-world signification of the terms, did not violate the principle[.]  Consideration of this evidence was not an abuse of the district court's recognized discretion over the admission of expert testimony.") (quotation omitted).

Furthermore, "[t]he Court generally disfavors motions to strike, and it especially disfavors them in this instance." *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 2016 WL 2344561, at *1 (D. Kan. May 4, 2016). "The district court's class certification order, while important, is also preliminary: 'An order that grants or denies class certification may be altered or amended before final judgment.'" *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004 (9th Cir. 2018) (quoting Fed. R. Civ. P. 23(c)(1)(C)). Furthermore, "[a] class certification hearing is not a hearing to decide the admissibility of evidence, but whether the case should proceed as a class under [R]ule 23; in that sense, it is more like a hearing under [R]ule 12(b)(6) or [R]ule 56 than one to determine admissibility under the rules of evidence." *Zuniga v. Bernalillo Cnty.*, 319 F.R.D. 640, 659 n.5 (D.N.M. 2016). Although the Tenth Circuit has provided no direct guidance, it appears that in class certification proceedings, "evidentiary rules need not be strictly applied at the class certification stage." *Ammons v. La-Z-Boy, Inc.*, 2008 WL 5142186, at *12 (D. Utah Dec. 5, 2008) (collecting cases). However, the more recent "trend of authority in favor of applying *Daubert* at the class certification stage is in accord with suggestions from the Supreme Court [in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 354 (2011) (expressing doubt about district court's conclusion that *Daubert* did not apply at class certification stage)]." *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 2019 WL 1569294, at *3 (D. Kan. Apr. 11, 2019) ("'Likewise, several recent opinions from district courts within the Tenth Circuit have permitted, or signaled the availability of, *Daubert*-style challenges at the class certification stage.'") (citing *Beltran v. InterExchange, Inc.*, 2018 WL 1509258, at *4 (D. Colo. Mar. 27, 2018) (adopting

5

magistrate judge's order employing "relaxed *Daubert*-like standard"); *Miller v. Farmers Ins. Grp.*, 2012 WL 8017244, at \*5 (W.D. Okla. Mar. 22, 2012) (relying on language from *Duke* to conclude it was appropriate to apply *Daubert* ); *In re Cox Enters., Inc. Set-Top Cable Television Box Antitrust Litig.*, 2011 WL 6826813, at \*14 (W.D. Okla. Dec. 28, 2011) (same); *see also In re Syngenta AG MIR 162 Corn Litig.*, 2016 WL 5371856, at \*7 (D. Kan. Sept. 26, 2016) (suggesting availability of *Daubert* challenge at class certification stage: "Although Syngenta challenges the reliability of those experts' opinions, it . . . did not raise a *Daubert* challenge, and the Court assumes the admissibility of those opinions at this stage").

Even so, "a judge, not a jury, decides class certification. The concerns underlying *Daubert* thus are not fully in play and this may make a 'less stringent application of *Daubert*' appropriate." *In re EpiPen*, 2019 WL 1569294, at \*3 (quoting *In re Zurn Pex Plumbing Products Liability Litigation*, 644 F.3d 604, 613 (8th Cir. 2011)). "The purpose of Rule 26(a)(2)'s expert disclosure requirements is to eliminate surprise and provide the opposing party with enough information regarding the expert's opinions and methodology to prepare efficiently for deposition, any pretrial motions and trial." *Cook*, 580 F. Supp. 2d at 1122. "Rule 26(a)(2) also authorizes admission of rebuttal expert testimony." *Duncan Grp., LLC v. Cimarex Energy Co.*, 2023 WL 3269699, at \*4 (W.D. Okla. Apr. 18, 2023) (citing Fed. R. Civ. P. 26(a)(2)(D)(ii)). "A party's expert disclosures must be made 'at the times and in the sequence that the court orders.'" *Id.* at \*3 (quoting Fed. R. Civ. P. 26(a)(2)(D)). Accordingly, the undersigned Magistrate Judge proceeds with a "focused *Daubert* analysis which scrutinize[s] the reliability of the expert testimony in light of the

6

criteria for class certification and the current state of the evidence." *In re Zurn*, 644 F.3d at 614. In the class certification context, then, "any *Daubert* analysis performed by the court will focus primarily on: (1) the knowledge, training, experience, and qualifications of the expert; and (2) the methodology relied on by the expert in formulating the challenged opinion." *In re EpiPen*, 2019 WL 1569294, at *4.

"The Federal Rules specifically limit rebuttal expert testimony to evidence that is 'intended solely to contradict or rebut evidence *on the same subject matter* identified by another party' in its expert disclosures. *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 2020 WL 1164869, at *14 (D. Kan. Mar. 10, 2020) (quoting Fed. R. Civ. P. 26(a)(2)(D)(ii)). Furthermore, "[r]ebuttal expert reports are not the proper place for presenting new arguments," and they "cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts." *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv. II, LLC*, 2016 WL 1597529, at *3 (D. Colo. Apr. 21, 2016) ("Rebuttal expert reports necessitate a showing of facts supporting the opposite conclusion of those at which the opposing party's experts arrived in their response reports.") (quotations omitted). Put another way, "[a] court properly may admit rebuttal evidence on a topic when a party opens the door to [that] topic. But generally, courts will exclude use of a rebuttal expert to introduce evidence more properly a part of a party's case-in-chief, especially if the alleged rebuttal expert is used to introduce new legal theories. *In re EpiPen*, 2020 WL 1164869, at *14 (quotations omitted).

Guided by these principles, this Court has "broad discretion" to evaluate whether an expert is helpful, qualified, and reliable under Fed. R. Evid. 702 and in the context of a

7

motion for class certification. *United States v. Velarde*, 214 F.3d 1204, 1208–09 (10th Cir. 2000). "It [also] follows that any *Daubert* ruling specific to the class certification stage is subject to amendment for purposes of the class certification determination and is not finally determinative of the admissibility of the expert's testimony at a trial on the merits." *In re EpiPen*, 2019 WL 1569294, at \*4 (citing *In re Zurn*, 644 F.3d at 610 ("We have never required a district court to decide conclusively at the class certification stage what evidence will ultimately be admissible at trial.").

### III.    ANALYSIS

*A. Terry's Qualifications*

Kris Terry is the President of Kris Terry & Associates, a consulting firm in the oil and gas industry. Prior to opening her consulting firm, Terry worked for Fina Oil and Chemical Company as an attorney, gas contracts Manager, Manager of Regulatory Affairs and Litigation, and Manager of Gas Marketing. Docket No. 129, p. 3. Terry's Expert Report ("Report") is both lengthy, covering almost 90 pages, and extensive, offering opinions on numerous topics related to this class action. *Id.*, Ex. 1. The Corrected Supplemental Expert Report ("Supplement") provides an additional 17 pages. *Id.*, Ex. 2.

An expert must be qualified to testify on the proposed subject matter. "To qualify as an expert, [the witness is] required to possess such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth." *Lifewise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004) (quotation and citationss omitted). The testimony must also concern scientific or specialized knowledge that will assist the jury in

understanding or determining a fact in issue. *See Daubert*, 509 U.S. at 592. "The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Graves v. Mazda Motor Corp.*, 675 F. Supp.2d 1082, 1092 (W.D. Okla. 2009), *aff'd*, 405 Fed. Appx. 296 (10th Cir. 2010) (quotation omitted). Accordingly, an "expert's qualifications must be both (i) adequate in a general, qualitative sense (*i.e.*, 'knowledge, skill, experience, training or education' as required by Rule 702); and (ii) specific to the matters he proposes to address as an expert." *Id.*; *see also Gardner v. General Motors Corp.*, 507 F.2d 525, 528 (10th Cir. 1974) (proposed expert "should not be required to satisfy an overly narrow test of his own qualifications").

Rule 702 explicitly allows an expert witness to testify "in the form of an opinion or otherwise," thus indicating that experts may do more than offer opinions. Fed. R. Evid. 702 advisory comm. notes (2000) ("The rule accordingly recognizes that an expert on the stand may give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts."). *See also United States v. Mulder*, 273 F.3d 91, 102 (2nd Cir. 2001) (expert may present background information to help jury understand issues); 29 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure § 6263 & n. 32 (1997 & Supp. 2012) (experts may describe recognized principles, provide general background, or simply explain other evidence).

Plaintiffs do not challenge Terry's qualifications, Docket No. 168, p. 27, lns. 19-21, and rightly so. *See, e.g.*, *Ulibarri v. Southland Royalty Co., LLC*, 2019 WL 1226962, at *4 (D.N.M. Mar. 15, 2019) ("As a threshold matter, the Court finds that Ms. Terry is qualified

to offer her opinions on the customs and practices, usage of terms, and historical context and circumstances in the oil and gas industry that have developed to shape common understanding of oil and gas agreements."); *Abraham v. WPX Prod. Prods., LLC*, 184 F. Supp. 3d 1150, 1206 (D.N.M. 2016) ("Terry's thorough education and extensive experience in oil and gas litigation give her the specialized knowledge and experience to make her opinion rest on a substantial foundation. . . . Terry has also testified in numerous oil-and-gas disputes, including one before this Court . . . The Court therefore concludes that Terry meets rule 702's requirement that she be 'qualified as an expert by knowledge, skill, experience, training, or education.'") (quoting Fed. R. Evid. 702).    Defendant demonstrates that Terry has the requisite education, training and experience, and the undersigned Magistrate Judge likewise finds her qualified.

B. *Motion to Exclude Portions of Kris Terry's Expert Report & Supplemental Report*

Plaintiffs challenge Terry's original Report on three grounds:  (1) Terry applies an improper legal standard that is contrary to Oklahoma law and/or she relies on inapplicable law, (2) her opinions were prepared solely for litigation, and (3) she provides improper narratives/summaries of the evidence that invade the province of the judge and jury. Plaintiffs challenge Terry's supplement on two grounds:  (1) it is a legal critique of Plaintiffs' legal arguments, consisting of the culmination of all her inadmissible legal conclusions, and (2) it is untimely.

Much of Plaintiff's argument is that Terry applies an improper legal standard or relies on inapplicable law.  The undersigned Magistrate Judge is capable of evaluating an expert's testimony in light of the applicable law of a case.  Here, the District of Colorado

10

is particularly helpful in explaining the line between permissible and impermissible testimony:

> An expert may opine on factual issues, including the industry standards in his field. *See O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 929 (D. Colo. 2017). This is true even if the relevant industry standards are derived from case law or other legal sources. An expert witness "may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible," and may "explain[ ] a discrete point of law which is helpful to the jury's understanding of the facts." *Specht v. Jensen*, 853 F.2d 805, 809-810 (10th Cir. 1988). "So long as experts are clear both in their written opinions and their trial testimony that they are only referencing their own understanding of the law to the extent it informs their understanding of industry standard[s], that is permissible." *Worley v. State Farm Auto. Ins. Co.*, 2025 WL 580493, at *2 (D. Colo. Feb. 6, 2025).

*MA v. Am. Nat'l Prop. & Cas. Co.*, 2025 WL 4095845, at *3 (D. Colo. Sept. 30, 2025); *see also Romeo v. Antero Resources Corp.*, 2021 WL 215494, at *3-4 (N.D. W. Va. Jan. 21, 2021) (preventing an expert from opining on the interpretation of the royalty provisions in the Class Leases, but allowing him to "explain terms of art in the oil and gas industry, and to describe certain customs and usage within that industry, [as] such testimony [would] aid the jury's understanding of a complex industry and is admissible."); *Noble Bottling, LLC v. Gora LLC*, 2023 WL 105333, at *3 (W.D.N.C. Jan. 4, 2023) ("While Federal courts have consistently held that it is typically improper for a court to rely on expert testimony for the purposes of interpreting certain terms and/or clauses of a contract, courts may allow an expert to testify regarding custom and usage of an industry when such an explanation would be helpful to the jury."). This can admittedly be a very fine line. *See, e.g.*, *MCC Mgmt. of Naples, Inc. v. Int'l Bancshares Corp.*, 468 Fed. Appx. 816, 822 (10th Cir. 2012) ("He did testify that, in his opinion, it was 'reasonable to conclude' that the agreement was

drafted in a 'very broad manner,' a conclusion touching the heart of this dispute, but expert opinion is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.") (*citing* Fed. R. Evid. 704(a)).

Moreover, "expert testimony prepared solely for purposes of litigation, as opposed to testimony flowing naturally from an expert's line of scientific research or technical work, should be viewed with some caution." *Johnson v. Manitowoc Boom Trucks, Inc.,* 484 F.3d 426, 434 (6th Cir.2007). But "[w]hile this factor may have significance in those cases involving scientific or technical methodologies, it has little application," *Raytheon Aircraft Co. v. United States*, 2008 WL 627488, at *10 (D. Kan. Mar. 4, 2008) (internal citations omitted), to oil and gas industry standards and lease language variances in leases involving payment of royalties. Furthermore, Plaintiffs' arguments that Terry's expert testimony for other Defendants in these royalty underpayment cases was "rejected," goes to the merits, not the question of inclusion for consideration.

Having reviewed Terry's Report and Supplemental Reports as part of the review of Plaintiffs' Motion for Class certification, the undersigned Magistrate Judge finds they should not be stricken. The Court has the expertise to distinguish between legal conclusions and relevant factual information, and will not treat legal conclusions as established facts. *See Allbaugh v. California Field Ironworkers Pension Tr.,* 2014 WL 2112934, at *7 (D. Nev. May 20, 2014) ("The Court has sufficient experience ignoring the legal conclusions of counsel and not treating those conclusions as established facts. Ms. Kroll does have personal knowledge of the content of the documents produced by Defendants, and her representation that notices have not been produced in discovery is

more efficient than filing and asking the Court to cull through 7,700 pages of discovery documents to demonstrate that same point. Plus, evidence considered for purposes of certification does not need to be admissible."); *In re Fibrogen Sec. Litig.*, 2023 WL 5600077, at *2 (N.D. Cal. Aug. 29, 2023) ("[T]he Court will disregard the argument and read the declaration for its factual content and authentication of the factual record.") (citing, *inter alia*, *Allbaugh*, 2014 WL 2112934, at *7 (finding that even if declaration included legal conclusions, "the proper remedy is not to disregard [the attorney's] declaration wholesale," as "[t]he [c]ourt has sufficient experience ignoring the legal conclusions of counsel and not treating those conclusions as established facts."). Given that Terry's Reports were provided at the class certification stage and the disfavored position of motions to strike, the Court declines to strike either of Terry's Reports. Terry testified that she was not offering a legal opinion, *see, e.g.*, Docket No. 168, p. 107, lns. 14-17, and further resolution of these issues was not required for purposes of Plaintiffs' motion for class certification. *See*, *e.g.*, *Romeo*, 2021 WL 215494, at *3-4 (preventing an expert from opining on the interpretation of the royalty provisions in the Class Leases, but allowing him to "explain terms of art in the oil and gas industry, and to describe certain customs and usage within that industry, [as] such testimony [would] aid the jury's understanding of a complex industry and is admissible."). For the reasons set forth above, the Court denies Plaintiffs' Motion to Exclude portions of Terry's Expert Report.

### C. Timeliness of Terry's Supplemental Report

Lastly, Plaintiffs contend that Terry's Supplement was filed out of time and was improper rebuttal. According to the Fourth Amended Scheduling Order [Docket No. 106],

Plaintiffs' expert disclosures were due on June 13, 2025, and Defendant's expert disclosures were due August 8, 2025. Expert depositions were then to be completed by September 5, 2025. Terry's expert report was submitted on August 8, 2025, and her corrected supplemental report was submitted to Plaintiffs approximately 36 hours before her deposition on November 4-5, 2025. Docket No. 141, Exs. 4-5. She was deposed on November 4-5, 2025.

Terry, who was contracted to provide an expert opinion with regard to the lease contract language relevant to royalty calculation, *see* Docket No. 141, Ex. 4, p. 3, did not have the benefit of Plaintiffs' numerous lease charts until Plaintiffs filed their motion for class certification on September 13, 2025. Before addressing the issue of Terry's Supplemental Report, the parties are reminded that this failure of planning caused them to dedicate substantial space in the briefing on the motion for class certification asking the Court to resolve issues that could have and should have been addressed prior to the filing of class certification. Given that both parties then ultimately attempted to raise substantive arguments through the creation of additional exhibits in order to avoid the page length limitations for their briefing, neither party should have been engaging in argument and use of resources and experts that communication would have resolved, or asked the court to waste its time parsing these issues. The Court would have preferred to grant an extension of time to allow this form of clarity rather than devote judicial resources to parsing and disposing of such issues. While Plaintiffs may have preferred to withhold their multiple lease charts until filing for class certification for strategic reasons, the result is that Defendant was then required to entirely reevaluate its understanding of Plaintiffs' proposed

14

class after already submitting its expert report.  For this reason alone, the undersigned Magistrate Judge finds that Terry's Supplement was an appropriate Supplement, and not a rebuttal to an existing expert report, following Plaintiffs' provision of the Lease Charts.

Plaintiffs nevertheless argue that any supplement would have been due within 30 days, or by October 13, 2025, following the September 13, 2025, filing of the motion for class certification.  *See* Fed. R. Civ. P. (a)(2)(D)(ii) (requiring any evidence intended solely to contradict or rebut evidence on the same subject matter identified by another party Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure).  The lease charts were not created by a witness, but by Plaintiffs' counsel.  Defendant therefore asserts that the timing for providing Terry's supplement is governed by Fed. R. Civ. P. 26(a)(3) (requiring pretrial disclosures to be made at least 30 days before trial), and (e)(2) (requiring supplements to expert reports to be due by the time a party's pretrial disclosures under Rule 26(a)(3) are due).  The Court agrees.  The undersigned Magistrate Judge therefore declines to find Terry's Supplemental Report untimely.

## CONCLUSION

Accordingly, Plaintiffs' Motion to (1) Exclude Testimony of Defendant's Lawyer/Expert, Kris L. Terry; and (2) Strike the Terry Rebuttal [Docket Nos. 126, 129] is DENIED.

DATED this 27th day of July, 2026.

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**

15